JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Cantrice Rufts

**(b)** County of Residence of First Listed Plaintiff  Oakland
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys
Cornerstone Legal Group, LLC
D. Wesley Cornish, Esquire
230 South Broad Street, 17th Floor
Philadelphia, PA 19102

## DEFENDANTS

Crossroads for Youths et al.

County of Residence of First Listed Defendant  Oakland
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☑ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☑ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☑ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 USC §1983

Brief description of cause:
Deprivation of Civil Rights

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**    ☑ Yes    ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE  9/11/25

SIGNATURE OF ATTORNEY OF RECORD

## FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.       Is this a case that has been previously dismissed?     ☐ Yes   ☑ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2.       Other than stated above, are there any pending or previously
        discontinued or dismissed companion cases in this or any other    ☐ Yes
        court, including state court? (Companion cases are matters in which   ☑ No
        it appears substantially similar evidence will be offered or the same
        or related parties are present and the cases arise out of the same
        transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes :

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**CARTIER RUFUS,**

        Plaintiff,

v.

**CROSSROADS FOR YOUTH;**
**OAKLAND INTERMEDIATE SCHOOL**
**DISTRICT; OAKLAND INTERMEDIATE**
**SCHOOL DISTRICT BOARD OF EDUCATION;**
and **JOHN/JANE DOES 1-10,** in their official, professional,
personal, and individual capacities, jointly
and severally;

        Defendants.

JURY TRIAL DEMANDED

CASE NO.:
HON.

---

David Wesley Cornish, Esquire*
Cornerstone Legal Group, LLC
230 South Broad Street, 17th Floor
Philadelphia, PA 19102

Phone: 888-313-1385
Email: dwesley24@gmail.com

*Attorney for Plaintiff*

---

## **COMPLAINT**

Plaintiff Cartier Rufus ("Rufus"), by and through counsel, alleges as follows, against Defendants Crossroads for Youth; Oakland Intermediate School District; Oakland Intermediate School District Board of Education; and John/Jane Does 1-10, in their official, professional, personal, and individual capacities (collectively "Crossroads for Youth", "Crossroads", the "Facility", the "School", "OISD", and/or "Defendants"):

## INTRODUCTION

1. At all relevant times to this Complaint, Crossroads for Youth operated a residential facility where juveniles were placed by the judicial system or their parents in Oxford, Oakland County, Michigan.

2. Crossroads for Youth has been continuously operational since at least 1981 and remains open.

3. Crossroads for Youth was delegated a critical and legislatively mandated public function: (a) to provide a custodial setting for children adjudicated delinquent in juvenile court proceedings, as well as children at risk for delinquency or criminal conduct; (b) to carry out legislatively mandated control and related services; and (c) to provide appropriate sanctions and rehabilitation under the laws governing punishment and treatment of juveniles for criminal acts.

4. Upon information and belief, Crossroads for Youth accepted juveniles court-ordered or otherwise placed into their care in Saginaw, Washtenaw, Wayne, and other Michigan Counties, by their respective parents, judges, and/or child protective and care agencies.

5. Upon information and belief, Crossroads for Youth offered rehabilitation, education, and support services for youth.

6. Oakland Intermediate School District and Oakland Intermediate School District Board of Education provided educational services at Crossroads for Youth.

7. Instead of fulfilling its promise and solemn responsibility to protect these vulnerable youth, they were exposed to predators and abusers. Crossroads for Youth failed to enact safety measures and other policies to protect children; failed to adequately screen, hire,

2

train, and supervise staff; and failed to fulfill its duties under state and federal law and, as a result of the Defendants' misconduct, Plaintiff was physically and sexually abused.

8. Thus, Crossroads for Youth, and OISD, acted as an arm of the State of Michigan, where it operated, providing a core public function, and was a state governmental actor for 42 U.S.C. § 1983 liability purposes.

9. Crossroads for Youth and OISD acted as an arm of the State of Michigan, where it operated, providing a core public function, acting under the color of law for 42 U.S.C. § 1983 liability purposes.

10. Defendants were bound by the "Balanced and Restorative Justice" (BARJ) philosophy which requires that "youth committing delinquent acts are provided with supervision, care, and rehabilitation (the legal basis for treatment of those adjudicated in the juvenile court system) in a manner that is balanced to include (1) community protection, (2) personal and legal responsibility, and (3) competency development."[1]

11. Defendants violated the clearly established federal Constitutional and statutory rights of Plaintiff pursuant to the Fourth, Eighth, and Fourteenth Amendments, and committed tortious conduct under state law, by subjecting Plaintiff to harmful and degrading physical, mental, and sexual abuse, including using physical force, and by failing to protect him from harm and injuries at the hands of others.

12. Defendants violated Plaintiff's state and federal Constitutional rights to educational opportunities.

---

[1] STATE OF MICHIGAN DEPARTMENT OF HEALTH & HUMAN SERVICES, JUVENILE JUSTICE FIELD SERVICES MANUAL, JJM 110 (Oct. 1, 2020), https://mdhhs-pres-prod.michigan.gov/olmweb/EX/JJ/Public/JJM/110.pdf.

13. Defendants caused the injuries and harms to Plaintiff by failing to properly train, supervise, and discipline the all the staff members and, as a result, the John/Jane Doe Defendants, as a matter of practice and custom, engaged in the prohibited conduct on a systematic basis with the expectation that their conduct would not be subject to discipline or sanctions.

14. Further, Defendants, Crossroads and OISD, failed to protect Plaintiff from assaults and abuse by their staff members and/or fellow students at Crossroads for Youth.

15. Because of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life, all of which adversely affects his daily activities and the full enjoyment of life. Plaintiff has already and will in the future sustain a loss of earnings and earning capacity and has and will continue to incur expenses for medical and psychological treatment, therapy, and counseling.

16. Accordingly, Plaintiff makes individual claims for the abuse he suffered from Defendants' conduct.

17. Plaintiff brings this lawsuit to hold Defendants accountable for the harm they caused him.

## JURISDICTION AND VENUE

18. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and § 1343 because Plaintiff alleges actions arising under the laws of the United States, including the Civil Rights Act of 1871, and 42 U.S.C. §§ 1983, 1985, and 1988, and deprivation of his federal constitutional rights to equal educational opportunities and other related federal rights.

4

19. At all relevant times, the individual Defendants acted under the color of state law and such actions were performed in the course and scope of their employment.

20. This Court has subject matter jurisdiction over individual claims brought by Plaintiff, based on the federal questions raised pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.

21. The amount in controversy, without interest and costs, exceeds $75,000.

22. This Court has supplemental jurisdiction over the state law claims, pursuant to 28 U.S.C. § 1367.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that the events and/or omissions giving rise to the claim occurred in this District and Defendants regularly conducted business within this Federal District, including accepting into their care residents from this District and providing care to residents in this District.

## PARTIES

24. Plaintiff is **Cartier Rufus**, an individual and resident of the United States of America, and the State of Michigan.

25. Defendant **Crossroads for Youth,** is a registered business with a corporate headquarters in Michigan which, at all times relevant to this Complaint, conducted business in Saginaw, Oakland, Washtenaw, and Wayne Counties, Michigan.

26. Defendant **Oakland Intermediate School District (OISD)** was at all relevant times and continues to be a public educational institution in Oakland County, Michigan and existing under the laws of the State of Michigan.

27. Defendant **Oakland Intermediate School District Board of Education (OBOE)** was at all relevant times and continues to be the governing body of Oakland Intermediate School District.

28. Defendants **John/Jane Does 1-10** are current and former owners, managers, administrators, supervisors, teaching staff, medical staff, and others who, at all times relevant to this Complaint, were employed by or were under the control of Crossroads for Youth and/or OISD and/or OBOE and abused and/or facilitated the abuse of children at Crossroads for Youth.

## COMMON FACTS AND ALLEGATIONS

29. Crossroads received children from across the State of Michigan.

30. Children were referred to Crossroads based upon Department of Human Services (DHS) referrals, judicial orders, or parent decisions.

31. At all times, the children referred to Crossroads by the juvenile courts and related agencies, including Plaintiff were not free to leave and were at all times while residing at this facility receiving rehabilitative care including physical, educational, therapeutic, and healthcare treatment, and were at all times participating in facility related and sponsored activities and Crossroads and any other party including OISD providing services at their facility were acting *in loco parentis*.

32. OISD provided educational services at Crossroads, and had existing policies to control the behavior and protect the safety of the children in their care and custody, including to prevent assaults, report child abuse, and provide all necessary related healthcare.

6

33. Crossroads had existing policies to control the behavior and protect the safety of the children in their care and custody, including to prevent assaults, report child abuse, and provide all necessary related healthcare.

34. OISD and Crossroads both had special relationships with Plaintiff based on the juvenile court entrusting his care to those entities to observe and control his person, and to these organizations due to them having the best ability to provide a place of safety and care.

35. Plaintiff was sexually assaulted by staff members while at the Crossroads facility, including **Ms. Thompson, Ms. Bouford, Mr. Mitchell, and Peyton Saburn**, yet does not know these individuals' official titles and whether they were employees, staff members, volunteers, or agents for Crossroads and/or OISD, only that these individuals oversaw them at Crossroads.

36. Plaintiff was owed a duty of protection and care by both Crossroads, OISD, and their respective staff members, employees, agents, and volunteers, as at all times Plaintiff was participating in a facility and/or school sponsored event.

37. Crossroads and OISD knew and/or should have known about the conduct of their employees including their proclivities to assault or otherwise injure minor students entrusted to their care, as the special relationship between the parties was unequal and placed the Plaintiff in danger of being subject to violations of his rights and legal protections and privileges.

### *Cartier Rufus's Abuse at Crossroads*

38. Plaintiff was court-ordered to reside at Crossroads .

39. At all times relevant hereto, Plaintiff was a victim of abuse during his time at Defendant Crossroads' facility by Crossroads and/or OISD staff members.

40. Plaintiff avers that Crossroads and/or OISD knew or should have known that its employee(s) had committed acts of abuse upon one or more of the other residents of its facility(ies) prior to the time that Plaintiff was subjected to the acts of abuse that are the subject of this filing.

41. Plaintiff describes the following incidents involving assault while he was housed at a Crossroads facility:

    a. Plaintiff was court ordered to live at Crossroads when he was a juvenile and while not certain believes he was admitted to Crossroads for Youth on approximately 2020-2021, when he was approximately 16-17 years old.

    b. While residing at Crossroads, believed to be the Oxford location, staff members from either Crossroads and/or OISD, including **Ms. Thompson, Ms. Bouford, Mr. Mitchell, and Peyton Saburn** sexually assaulted him.

    c. Plaintiff believes at all relevant times he was housed in the Achievement Center area of the facility.

    d. These staff members, **Ms. Thompson, Ms. Bouford, Mr. Mitchell, and Peyton Saburn**, each separately sexually assaulted him.

    e. These same staff members also fondled, groped, and touched Plaintiff's genitals.

    f. **Ms. Thompson**, sexually assaulted Plaintiff at nighttime when she called him into her office to conduct a weekly progress review.

    g. Plaintiff then was taken to the laundry room by Ms. Thompson, where she forced him to engage in oral sex.

8

h. Plaintiff told **Ms. Thompson** numerous times he did not feel comfortable with her actions and this staff member ignored his pleas and continued to force Plaintiff to engage in oral sex.

i. **Ms. Bouford**, a staff member believed to be a manager, fondled, groped, Plaintiff's genitals and forced Plaintiff to engage in oral sex.

j. Plaintiff believes he was sexually assaulted by **Ms. Bouford** in approximately August 2021, in the afternoon.

k. Plaintiff was told by **Ms. Bouford**, he would get an early recommendation for release if he did not disclose the sexual abuse he endured from her.

l. Plaintiff believes he was sexually assaulted, by **Ms. Bouford**, in this manner on at least 3 separate instances.

m. **Mr. Mitchell**, a staff member believed to be a drill instructor, forced Plaintiff on multiple instances to strip for a search after returning to campus, and would grab, squeeze, and fondle Plaintiff's genitals.

n. Plaintiff recalls being abused by **Mr. Mitchell** in the facility's laundry room.

o. **Mr. Mitchell** also forcibly engaged in oral sex with Plaintiff on numerous occasions.

p. Plaintiff believes **Peyton Saburn** sexually abused him in approximately July or August 2021 around 8 or 815p, at the facility's laundry room.

q. **Peyton Saburn**, on multiple instances, fondled and groped Plaintiffs, related to strip searches when Plaintiff returned to the facility.

9

    r.  While being strip searched **Peyton Saburn** forced Plaintiff to spread his buttocks and while this was happening **Peyton Saburn** grabbed Plaintiff's penis and said, "I like young black kids with big dicks".

    s.  **Peyton Saburn** threatened Plaintiff's safety and told him not to report his sexual abuse to anyone.

42. Specifically, regarding staff member(s), **Ms. Thompson, Ms. Bouford, Mr. Mitchell, and/or Peyton Saburn** it is averred that the physical contact made with Plaintiff's body was indecent contact for the purpose of arousing the aforementioned individual(s).

43. When **Ms. Thompson, Ms. Bouford, Mr. Mitchell, and/or Peyton Saburn** fondled, groped, and touched Plaintiff's genitals, in addition to engaging in forcible penetration, and forcing him to engage in oral sex, they engaged in criminal sexual conduct pursuant to MCL §5805 (16)(b).

44. **Ms. Thompson, Ms. Bouford, Mr. Mitchell, and/or Peyton Saburn** committed criminal sexual conduct via MCL §750.520(b) as the Defendants engaged in sexual penetration of Plaintiff who was under 16 years old, the actors were in a position of authority over Plaintiff, MCL §750.520(c) as the Defendnats and their respective staff members were in positions of authority over the Plaintiff and used their authority to coerce the Plaintiff to submit, and/or the sexual contact occurred under circumstances involving the commission of another felony and/or the Defendant causes personal injury to the victim and the actor knows or has reason to know that the victim is mentally incapable, mentally incapacitated, or physically helpless, and/or that other person is mentally incapable, mentally disabled, mentally incapacitated, or physically helpless, and the actor is in a position of authority over the victim and used this authority to coerce the

victim to submit, and/or that Plaintiff is under the jurisdiction of the department of corrections and the actor is an employee or a contractual employee of, or a volunteer with, a private vendor that operates a youth correctional facility under section 20g of the corrections code of 1953, 1953 PA 232, MCL 791.220g, who knows that the other person is under the jurisdiction of the department of corrections, and/or the Defendant knows or has reason to know that a court has detained the victim in a facility while the victim is awaiting a trial or hearing, or committed the victim to a facility as a result of the victim having been found responsible for committing an act that would be a crime if committed by an adult, and the person is an employee or contractual employee of, or a volunteer with, the facility in which the victim is detained or to which the victim was committed, § MCL 750.520(d), as Plaintiff was under 16 years old when assaulted, the assault involved the use of force or coercion, the Plaintiff was likely mentally impaired, the actor is an employee or a contractual service provider of the public school, nonpublic school, school district, or intermediate school district in which that other person is enrolled, or is a volunteer who is not a student in any public school or nonpublic school, or is an employee of this state or of a local unit of government of this state or of the United States assigned to provide any service to that public school, nonpublic school, school district, or intermediate school district, and the actor uses the actor's employee, contractual, or volunteer status to gain access to, or to establish a relationship with, § MCL 750.520(e) as the Defendnats and their respective staff members, as the Plaintiff was coerced to engage in sexual contact when the staff member, who was providing mental health treatment, engaged in the medical treatment or examination of the Plaintiff in a manner or for purposes which are medically recognized as unethical or unacceptable.

11

45. Crossroads and/or OISD supervisors, employees, administrators, and/or staff members implicated who directly caused the harm to Plaintiff and/or threatened Plaintiff were acting within the scope of their duties as employees of Crossroads and/or OISD and caretakers to Plaintiff.

46. It is averred Crossroads' and/or OISD's staff, supervisors, administrators, and employees actively discouraged and prevented disclosure to third parties about any claims of child abuse against any staff member at any facility operated by Defendants.

### *All Defendants Had a Duty to Provide a Safe and Secure Facility for Juveniles Committed to or Otherwise Housed at CROSSROADS and Provide Educational Opportunities Pursuant to Constitutional and State Law Mandates*

47. At all times the institutional Defendants Crossroads and OISD and all their staff members, workers, employees, servants, volunteers, and the like were mandatory reporters pursuant to Michigan law and were required to report any suspected child abuse pursuant to section (3) of M.C.L. 722.623, *et seq.*; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendants' facilities.

48. Crossroads served as a custodial facility for the placement of juvenile court adjudicated youth and other at-risk youth. Opening in approximately 1987 and still operating provided juvenile residential care for the duration of its existence. Upon information and belief, it claimed to assess the unique needs of each student, teach tools for success, and offer meaningful opportunities for personal growth.

49. Upon information and belief, children with a wide range of backgrounds, abilities, and diagnoses received treatment from Crossroads programs. Crossroads offered clinical,

therapeutic, educational, and employment programs for children with special needs and their families.

50. Upon information and belief, there was no clear and safe mechanism by which victims could report abuse within Crossroads; as reported, those who did report were disbelieved, or worse, retaliated against, exacerbating and amplifying the trauma of the actual abuse.

51. Upon information and belief, many of the children who were housed at Crossroads were vulnerable, intellectually disabled, and/or already fleeing from abuse.

52. The power differential between children with physical, emotional and/or intellectual disabilities and behavioral health staff is distinctively extreme. Youth with disabilities are easily targeted because they are more likely to be perceived as weak or vulnerable, and are seen as less likely to report abuse, especially when the victim has limited communication abilities or cognitive impairments. Especially in a group home or residential treatment setting, abuse can more easily be hidden, and children have limited access to police, advocates, or social services representatives who can intervene.

53. Upon information and belief, Crossroads and/or OISD failed to enact appropriate uniform national and system-wide protocols and policies to ensure the safety of its youth. Defendants acted with an extreme disregard for the wellbeing of children in its programs by failing to properly screen, hire, and train employees, failing to report known abuse of youth in Crossroads facilities, and ignoring and covering up complaints alleged against it regarding child abuse.

54. Further, Crossroads and OISD failed to enact sufficient measures to ensure the safety of youth in its care.

13

55. Moreover, Crossroads' and OISD's lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its students exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

56. The term "Institutional Betrayal" refers to wrongdoings perpetrated by an institution upon individuals dependent on that institution, including failure to prevent or respond supportively to wrongdoings by individuals (*e.g.,* physical, emotional, and sexual abuse) committed within the context of the institution.

57. These failures, acts, and egregious omissions created a highly dangerous risk of physical, emotional, and sexual abuse for any child placed in a Crossroads program or facility. This pervasive culture of abuse allowed perpetrators access and opportunity to abuse highly vulnerable children and young adults and gave them the impunity to act without the risk of detection or punishment.

58. Upon information and belief, Crossroads and OISD was funded in large part by the State of Michigan and other government entities, jurisdictions, and agencies, both inside and outside Michigan, to provide services mandated by law for children who had been ordered to receive its services by a court.

59. Defendants had the duty to provide treatment, supervision, and rehabilitation in accordance with federal and state Constitutional standards and laws and prevailing standards for the care and custody of juveniles in need of treatment and supervision. As detailed in this Amended Complaint and Plaintiff's original Complaint, Defendants failed to provide these services in accord with Constitutional, statutory, and community standards of care.

## **COMMON CAUSES OF ACTION**

14

## Federal Law Claims

### COUNT 1 – Violations of Title IX 20 U.S.C. § 1681 *et seq.*
### Deliberate Indifference to Sex Discrimination
### As to the CROSSROADS and OISD Defendants

60. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

61. Federal law, Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

62. Title IX is implemented through the U.S. Department of Education (DOE) regulations, which apply to "every recipient [of federal funding] and to all sex discrimination occurring under a recipient's education program or activity in the United States," 34 C.F.R. § 106.11, and which covers sexual harassment—including sexual assault—by school employees, students, and third parties.

63. The DOE regulations further require that recipients of federal financial assistance "must adopt, publish, and implement grievance procedures . . . that provide for the prompt and equitable resolution of complaints made by students, employees, or other individuals who are participating or attempting to participate in the recipient's education program or activity, or by the Title IX Coordinator, alleging any action that would be prohibited by Title IX or this part." 34 C.F.R. § 106.8(b)(2).

64. Plaintiff is a "person" under Title IX.

15

65. Defendants' programs and facilities included educational programs. Education was a primary aspect of the services Defendants provided to Crossroads residents by Crossroads and OISD.

66. Defendants received federal financial assistance for their education programs and was therefore subject to the provisions of Title IX of the Educational Amendments of 1972, 20 U.S.C. §§ 1681, *et seq.*, and its implementing regulations at 34 C.F.R. §§ 106.1 *et seq.*

67. Under Title IX, Defendants were required to promptly investigate and address allegations, reports, and complaints of sexual harassment, assault, and abuse of youth in its programs.

68. Plaintiff and other children were subjected to sexual harassment, abuse, and assault by Crossroads and/or OISD staff members while a resident at Crossroads.

69. The sexual harassment, abuse, and assault experienced by Plaintiff and other children at Crossroads constituted sex discrimination under Title IX.

70. Defendants were on notice of the conduct as described above but nonetheless failed to carry out their duties to investigate and take corrective action under Title IX.

71. Defendants Crossroads and OISD failed to take immediate, effective remedial steps to resolve Plaintiff's and other children's complaints of sex discrimination and instead acted with deliberate indifference to Plaintiff's and other children's claims, including punishing another child for reporting abuse.

72. The sexual harassment, abuse, and assault experienced by Plaintiff at Crossroads was so severe, pervasive and objectively offensive that it impeded and effectively denied Plaintiff's equal access to educational opportunities and benefits.

73. Defendants engaged in a pattern and practice of behavior designed to discourage and dissuade children who had experienced sexual assault and discrimination from seeking assistance and protection.

74. Defendants Crossroads and/or OISD were deliberately indifferent to Plaintiff's sexual abuse by, among other things:

    a. Failing to promptly and adequately investigate, remedy, and respond to his and other children's complaints about sexual abuse at Crossroads;

    b. Punishing children for reporting sex abuse;

    c. Failing to adequately train and supervise staff members on how to respond to and address sex abuse; and

    d. Failing to maintain appropriate numbers of staff to ensure that there were no blind spots where sex abuse could go undetected.

75. Defendants are also liable for their failure to remedy the hostile educational environment experienced by Plaintiff by failing to offer appropriate interim measures and accommodations that could have provided him equal access to educational opportunities and benefits and failing to remedy known sexually hostile environments.

76. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

77. In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Title IX, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression.

Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

78. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

<u>**COUNT 2 – Violations of Title IX 20 U.S.C. § 1681** *et seq.*</u>
<u>**Policy or Practice/Heightened Risk of Sexual Harassment**</u>
**As to the CROSSROADS and OISD Defendants**

79. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

80. The abuse described previously in this Complaint created an abusive and sexually hostile educational environment on Crossroads' and/or OISD's campus and classrooms that impeded and effectively denied Plaintiff's equal access to educational opportunities and benefits.

81. Defendants are liable for the abusive and hostile educational environment on campus because they had actual knowledge of its staff in sex discrimination and abuse of children but allowed them to continue to have unfettered access to children.

82. Upon information and belief, Defendants failed to provide appropriate training and supervision of its staff to ensure that sexual abuse of children would not occur and that, if it did, it would be addressed appropriately.

18

83. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

84. In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Title IX, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

85. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

    **WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 3 – Violations of Title 42 (42 U.S.C. § 1983 *et seq.*)
### Civil Rights Deprivation and Excessive Use of Force
### As to All Defendants

86. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

87. Pursuant to the Fourth, Eighth and Fourteenth Amendments of the United States Constitution, at all times relevant, Plaintiff had the right to be free from cruel, unusual and excessive force while under the custody and control of Defendants.

19

88. At all times Plaintiff was unarmed, and did not pose a threat of safety to Defendants or others.

89. Under all circumstances known to Defendants, the physical force used against Plaintiff was objectively and clearly excessive.

90. The Fourth, Eighth, and Fourteenth Amendments to the United States Constitution protect Plaintiff from physical and sexual abuse and unreasonable uses of force by Defendants.

91. These Amendments also require Defendants to establish policies and practices to protect Plaintiff and other children from known harms and known patterns of constitutional deprivations.

92. Defendants Crossroads and OISD violated Plaintiff's clearly established right to be free from unreasonable and excessive use of force as guaranteed by the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

93. Crossroads and/or OISD acted as an arm of the State of Michigan, where it operated, providing a core public function, and was a state governmental actor for 42 U.S.C. § 1983 liability purposes.

94. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

95. In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Plaintiff's Constitutional rights, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute

malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

96. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiff demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 4 – Violations of Title 42 (42 U.S.C. § 1983 *et seq.*)
### *Monell* Liability
### As to All Defendants

97. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

98. At all times relevant hereto, Defendants failed to train, discipline and supervise Crossroads and/or OISD employees responsible for Plaintiff's custody and care, and/or encouraged Crossroads and/or OISD employees to violate federal and state laws without regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

99. At all times relevant hereto, Defendants refused to provide Crossroads and/or OISD employees any training, discipline and supervision with regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution; refused to provide Crossroads and/or OISD employees with supervision and discipline to protect the constitutional rights of citizens; and refused

21

to require Crossroads and/or OISD employees to follow policies and procedures and state and federal law relating to Plaintiff's right to be provided with medical care for serious medical needs.

100. At all times relevant hereto, Defendants knew, or should have known, that the policies, procedures, training supervision and discipline of Crossroads and/or OISD employees were inadequate for the tasks that each Defendant was required to perform.

101. At all times relevant hereto, there was a complete failure to train, supervise and discipline Crossroads and/or OISD employees. The training, supervision and lack of discipline were so reckless that future violations of the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as described in the preceding paragraphs, were certain to occur.

102. At all times relevant hereto, Defendants were on notice and knew that the failure of training, discipline and/or supervision of Crossroads and/or OISD employees with regard to the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as described in the preceding paragraphs, were inadequate and would lead to the violation of Plaintiff's constitutional rights.

103. At all times relevant hereto, Defendants' response to this knowledge was so inadequate as to show a complete disregard for whether Crossroads and/or OISD employees would violate the constitutional rights of citizens to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

104. Defendants implicitly authorized, approved, or knowingly acquiesced in the excessive force and cruel and unusual punishment of citizens, and knew, or should have known,

22

that such treatment would deprive Crossroads residents and/or OISD pupils of their constitutional rights.

105. At all times relevant hereto, there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as described in the preceding paragraphs.

106. At all times relevant hereto, Defendants knew, or should have known, that there was a clear and persistent pattern of violations of citizens' constitutional rights to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, as described in the preceding paragraphs.

107. Defendants tolerated the police officers' repeated violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution, which allowed Crossroads and/or OISD employees to continue to engage in this unlawful behavior.

108. Defendants refused to discipline officers who violated citizens' constitutional rights to be free from violations of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution; failed to fully investigate allegations of misconduct, looked the other way, and thus, tacitly encouraged such behavior. In doing so, Defendants condoned, ratified or encouraged Crossroads and/or OISD employees to violate the Fourth, Eighth and Fourteenth Amendments to the United States Constitution as a matter of policy.

109. That the conduct of the aforementioned Defendants, individually, corporately and as agents of said individual Defendants, deprived Plaintiff of his clearly established rights, privileges, and immunities guaranteed him under the United States Constitution,

specifically those set forth under the Fourth, Eighth and Fourteenth Amendments to same, as evidenced by the following particulars:

    a. Permitting Plaintiff and other Crossroads residents and/or OISD pupils to be subject to excessive force and cruel and unusual punishment, in violation of the Fourth, Eighth and Fourteenth Amendments;

    b. Failing to properly train and supervise the individuals within Crossroads and/or OISD having custodial and/or care giving responsibilities over Plaintiff to ensure the above breaches/deviations were not committed;

    c. Tolerating the conduct of individuals within Crossroads and/or OISD having custodial and/or care when it was apparent that there was a pattern of treatment of Plaintiff and other persons in a manner consistent with excessive force and in violation of his Fourth, Eighth and Fourteenth Amendment protection against excessive force and cruel and unusual punishment; and

    d. Failing to discipline the individuals within Crossroads having custodial and/or care when it was apparent that they were using excessive force and cruel and unusual punishment.

110. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

111. In subjecting Plaintiff to this wrongful treatment as described, and through its violations of Plaintiff's Constitutional rights, Defendants acted willfully and maliciously with the intent to harm Plaintiff, and in conscious disregard of Plaintiff's rights, so as to constitute

24

malice and oppression. Plaintiff is therefore entitled to the recovery of punitive damages, in an amount to be determined by the court, against Defendants, in a sum to be shown according to proof.

112. Furthermore, Plaintiff requests the award of attorneys' fees pursuant to 42 U.S.C. § 1988(b).

**WHEREFORE,** Plaintiff demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### Michigan State Law Claims

### COUNT 5 – Negligence and Recklessness
### As to All Defendants

113. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

114. Defendants had a duty to act reasonably and to maintain a safe environment for Plaintiff while within the Defendants' care.

115. Defendants are not afforded immunity via M.C.L. 691.1635 or 691.1407 because the conduct which caused Plaintiff's injuries amounts to gross negligence and/or willful misconduct and/or was prohibited by law and a violation of the prohibition is punishable by imprisonment.

116. Defendants Crossroads and OISD acted with a lack of care towards Plaintiff through their acts and omissions, including: allowing and authorizing a culture of abuse at Crossroads facilities; failing to train and educate staff regarding the identification and reporting of abuse; failing to properly supervise youth attending Crossroads programs;

failing to adequately train staff regarding best practices when working with youth with intellectual and developmental disabilities and youth with advanced mental health needs; failing to adequately supervise staff members to proactively identify and curtail signs of abuse; failing to maintain Crossroads facilities so as to eliminate "blind spots" where abuse could easily occur without detection; failing to instruct supervisors regarding circumstances indicating a high risk of abuse; failing to monitor Plaintiff's wellbeing while in Crossroads and/or OISD programming so as to detect incidents of abuse; failing to take adequate and appropriate measures after learning about incidents of physical, sexual and/or emotional abuse at Crossroads; and failing to prevent serious and lasting psychological, physical, and emotional harm to youth in Crossroads and/or OISD programs.

117. Moreover, Defendants' lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of children exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

118. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

**WHEREFORE,** Plaintiff, demands judgment against Defendant, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 6 – Negligent Retention**
**As to All Defendants**

26

119. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

120. Defendants became aware or reasonably should have become aware that their employees were engaged in acts of physical, sexual, and/or emotional abuse of Crossroads and/or OISD patients, students, and residents, and yet failed to investigate, discharge, or reassign these employees.

121. Defendants Crossroads and/or OISD reasonably should have known that their staff physically and sexually abused Plaintiff while in their care. With reasonable supervision, protocols, and checkpoints in place, Defendants should have been aware of these egregious acts. Nonetheless, Defendants allowed the abuse to occur and retained the employees responsible for these heinous acts without taking corrective action.

122. Defendants reasonably should have known that Crossroads and/or OISD staff verbally and physically abused Plaintiff. Multiple staff observed Plaintiff's abuse, putting Crossroads and/or OISD on actual notice of its employees' bad acts.

123. Defendants also knew, through the direct observation of its staff, that Crossroads and/or OISD staffers physically abused Plaintiff, routinely watched and groomed Plaintiff and other children for sexual abuse and threatened them with physical harm when they tried to report such.

124. With reasonable supervision and protocols in place, Defendants would have responded appropriately to each of these incidents and ensured children were safe from future abuse.

125. Defendants reasonably should have known that **Ms. Thompson, Ms. Bouford, Mr. Mitchell, and Payton Sabarn** sexually abused Plaintiff on Crossroads property. Had

27

Defendants adequately and appropriately supervised and exercised control over its staff, they would have been aware of the abuse that occurred to Plaintiff.

126. Defendants knew or reasonably should have known of Plaintiff's and other children's abuse yet negligently retained the employees responsible for the abuse. Because of Defendants' breach of their duty to take action to prevent reasonably foreseeable harm by their employees under these circumstances, Plaintiff was grievously harmed.

127. Moreover, Defendants' lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of children exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

128. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered damages, including emotional distress, great pain of mind and body, shock, embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of income, and a loss of education.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

<u>**COUNT 7 – Negligent Supervision**</u>
**As to All Defendants**

129. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

130. Defendants Crossroads and OISD knew or should have known of the need to properly and effectively observe, manage, direct, oversee, and/or supervise administrators, staff,

teachers, counselors, employees, agents, servants, representatives, and/or ostensible

agents in their relationships with children.

131. Defendants knew or should have known of the particular risk posed by the staff

members named within the Amended Complaint and Complaint and others based on,

among other things, their inappropriate and/or questionable conduct; their history of

sexually, physically, and/or emotionally abusing children; and/or their behavior

indicative of an intent to isolate, groom, and/or facilitate sexually contacting and/or

abusing a minor child, including the abuse by the staff members named within the

Complaint and others.

132. The negligence, carelessness, and/or recklessness of Defendants, for the conduct of

their actual or apparent administrators staff, teacher, counselors, employees, agents,

servants, representatives, and/or ostensible agents, in the hiring, certifying, assigning,

observation, retaining, supervision, management, oversight, direction, administration,

and/or otherwise control of the staff members named within the Complaint and/or other

staff members consists of one or more of the following:

    a.  Negligent hiring, certifying, assigning, observation, retaining, supervision,

        management, oversight, direction, administration, and/or otherwise control of

        staff and/or teachers and/or counselors in the employ of Defendants;

    b.  Failing to use due care in hiring, certifying, assigning, observation, retaining,

        supervision, management, oversight, direction, administration, and/or otherwise

        control of the staff members named within the Complaint and/or other staff

        members and the relationship of the staff members named within the Complaint

        and others and/or other staff members with Plaintiff; and

29

    c. Failing to investigate and supervise the staff members named within the

        Complaint and/or other staff members and their relationship and/or interactions

        with Plaintiff.

133. Moreover, Defendants' lack of and/or failure to enforce adequate policies and

procedures for the prevention of, and proper response to, abuse of children exacerbated

and amplified the trauma of the actual abuse due to institutional betrayal.

134. As a direct and proximate result of Defendants' actions and inactions, Plaintiff suffered

damages, including emotional distress, great pain of mind and body, shock,

embarrassment, humiliation, loss of self-esteem, physical pain and suffering, a loss of

income, and a loss of education.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly

and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive

damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 8 – Gross Negligence
**As to All Defendants**

135. Plaintiff alleges and incorporates via reference the allegations contained in all the above

paragraphs, as fully as though the same were set forth herein at length.

136. Defendants owed Plaintiff a duty to provide a safe environment with adequate

protection, supervision, and care while in their custody.

137. Defendants acted with a lack of care towards Plaintiff by demonstrating a conscious

disregard or indifference towards his safety and wellbeing and significantly departing

from how a reasonably careful person would act under the circumstances.

138. At all relevant times, Defendants owed a duty to Plaintiff to implement practices and policies to:

   a. Prevent sexual, emotional, and physical abuse of youth by CROSSROADS and/or OISD staff;

   b. Prohibit and prevent romantic or sexual relationships between youth and CROSSROADS and/or OISD staff;

   c. Prohibit grooming and other sexually exploitative behavior by CROSSROADS and/or OISD staff;

   d. Require the prompt reporting of any allegations or suspicions of sexual, physical, or emotional abuse of youth in CROSSROADS and/or OISD programs by staff or by peers;

   e. Require the independent investigation of all reports of sexual, physical, or emotional abuse of youth in CROSSROADS and/or OISD programs;

   f. Mandate the training of all staff who work directly with youth in CROSSROADS and/or OISD programs regarding sexual abuse, sexual relationships with residents, grooming, sexual reactivity, the prohibition thereof, and reporting obligations;

   g. Protect Plaintiff and from such abuse and foreseeable risks; and

   h. Provide a safe environment for children with disabilities and mental health needs free from sexual abuse, harassment, and physical harm.

139. Defendants' duty arose from taking responsibility for the care and custody of youth attending their programs.

31

140. Defendants acted recklessly and indifferently as the entity responsible for the care and custody of children with disabilities and advanced mental health needs who sought out Crossroads for treatment, growth, and education, including Plaintiff.

141. Defendants knew or should have known that by failing to take appropriate measures with respect to the lack of appropriate training, supervision, and oversight of its facilities and employees who worked closely with children and young adults suffering with advanced mental health needs, criminal records, unstable family relationships, substance abuse concerns, and/or intellectual and developmental disabilities, they created an unreasonable risk of harm to Plaintiff so great that it was highly probably that harm would result.

142. Youth like Plaintiff in residential programs like Crossroads are easily targeted because they are more likely to be perceived as weak or vulnerable and are seen as less likely to report abuse. In a group home or residential treatment setting, abuse can more easily be hidden, where children have limited access to parents, guardians, police, advocates, or social services representatives who can intervene.

143. Defendants should have been aware of the delicate nature of working with these youth and the likelihood of abuse and harm resulting from the failure to closely monitor, train, and supervise their staff. Defendants thus owed its resident youth a duty to protect them from the foreseeable risk of staff who take advantage of children's vulnerability and staff's power differential for improper purposes.

144. By recklessly failing to keep these children safe while in its care and custody, Defendants exhibited a willful disregard for necessary precautions to reasonably protect Plaintiff.

145. Moreover, Defendants' lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of children exacerbated and amplified the trauma of the actual abuse due to institutional betrayal.

146. As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of education. Plaintiff was prevented and will continue to be prevented from performing his activities of daily living due to the gross negligence of Defendants.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## <u>COUNT 9 – Vicarious Liability</u>
### As to the CROSSROADS  Defendants

147. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

148. When Plaintiff was sexually, physically, and emotionally abused by Crossroads staff members, these staff members were acting within their scope of employment in supervising and providing treatment to Crossroads patients.

149. Crossroads is vicariously liable under the doctrine of *respondeat superior* for the tortious conduct committed by their staff members against children at Crossroads.

150. Crossroads ratified its staff members' abusive conduct towards Plaintiff by failing to discipline, take corrective action, and/or report the child abuse.

151. These tortious acts were also foreseeable, as Crossroads was aware of repeated incidents of sexual, physical, and emotional abuse of Crossroads patients within their facilities. Crossroads knew that its patients, including Plaintiff, were particularly susceptible to abuse as youth with disabilities and critical mental health needs. Crossroads knew, or reasonably should have known, that by failing to implement appropriate procedures, policies, and safeguards, it was highly foreseeable that its staff would continue to abuse vulnerable children in their treatment programs, including Plaintiff.

152. As a direct and proximate result of Crossroads' actions and inactions, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of education. Plaintiff was prevented and will continue to be prevented from performing his activities of daily living due to the gross negligence of Crossroads.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

## COUNT 10 – Intentional Infliction of Emotional Distress
### As to the CROSSROADS Defendants

153. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

154. Crossroads' conduct was extreme and outrageous.

34

Case 2:25-cv-12933-JJCG-EAS   ECF No. 1, PageID.37   Filed 09/15/25   Page 37 of 42

155. Crossroads' actions and inactions were outrageous and extreme, shocking, atrocious, and intolerable. Their conduct goes beyond the possible bounds of decency, and Crossroads for Youth acted with the reckless disregard of the probability that Plaintiff would suffer emotional distress as a result.

156. Crossroads for Youth conduct was a substantial factor in causing severe emotional and psychological distress to Plaintiff. This distress was of such an intensity that no reasonable person should be expected to endure it.

157. Moreover, Crossroads for Youth lack of and/or failure to enforce adequate policies and procedures for the prevention of, and proper response to, abuse of its patients exacerbates and amplifies the trauma of the actual abuse due to institutional betrayal.

158. By permitting a culture of systematic physical, emotional, and sexual abuse at Crossroads for Youth facilities, Crossroads for Youth caused Plaintiff to suffer, among other things, appalling and deplorable acts of physical, sexual, and/or emotional abuse, and the resulting pain, suffering, humiliation, grief, shame, disgust, anxiety, nervousness, shock, distrust, and loss of enjoyment of life. Plaintiff will continue to suffer from these enduring harms and has incurred/will continue to incur lost earnings, lost earning capacity, and expenses for psychological treatments and counseling.

159. **WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

**COUNT 11 – Breach of Fiduciary Duty**
**As to the CROSSROADS Defendants**

35

160. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

161. Crossroads owed a fiduciary duty to act in the best interests of the youth they serve. When a child was placed in Crossroads, Crossroads assumed the fiduciary duty to ensure that the child received appropriate care and was safe from foreseeable harms.

162. By allowing and authorizing a culture of physical, emotional, and sexual abuse in its programs and facilities, repeatedly failing to report child abuse in its facility, allowing youth to be systematically abused while in Crossroads programs, inadequately training and supervising employees, failing to maintain safe premises for youth which eliminated "blind spots," and failing to monitor Plaintiff's wellbeing so as to detect signs of abuse, among other failures, acts, and omissions as previously described, Crossroads breached its fiduciary duty towards Plaintiff.

163. As a direct and proximate result of Crossroads' actions and inactions, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of education. Plaintiff was prevented and will continue to be prevented from performing his activities of daily living due to the gross negligence of Crossroads.

**WHEREFORE**, Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems appropriate.

### COUNT 12 – Violation of the Elliott Larsen Civil Rights Act
### M.C.L. 37.2201 et seq. – Sex Discrimination

**As to All Defendants**

164. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

165. Defendants Crossroads and OISD are educational institutions by and within the meaning of ELCRA, M.C.L. 37.2401.

166. ELCRA prohibits discrimination in educational institutions based on sex, specifically providing that no school shall "[d]iscriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of . . . sex." MCL 37.2402(a).

167. Defendants violated the ELCRA by failing to timely investigate and respond to reports of sexual abuse, providing any interim measures to ensure the safety of the victim, and failing to commence any sort of investigation after a report was filed, and failing to adequately train and supervise their staff with respect to the handling of sex discrimination complaints.

168. As a direct and proximate result of Defendants' actions and inactions, Plaintiff has suffered and/or continue to suffer from physical pain and suffering, mental and emotional distress and suffering, physical manifestations of this distress, loss of self-esteem, anxiety, fright, grief, humiliation, loss of enjoyment of life, a loss of income, and a loss of education. Plaintiff was prevented and will continue to be prevented from performing his activities of daily living due to the gross negligence of Crossroads and/or OISD.

**WHEREFORE,** Plaintiff, demands judgment against Defendants, individually, jointly and/or severally, in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00),

37

exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive

damages, and such other legal and equitable relief as the Court deems appropriate.

## **PRAYER FOR RELIEF**

169. Plaintiff alleges and incorporates via reference the allegations contained in all the above

paragraphs, as fully as though the same were set forth herein at length.

170. Plaintiff respectfully requests the Court to enter judgment on his behalf as follows:

    a. Declaring that Defendants violated their mandatory reporting obligations;

    b. Ordering Defendants to make a complete disclosure of all records and information

        in their possession, custody, or control during the time period from five years

        before Plaintiff's residency to the present pertaining to the abuse of students at

        Crossroads. Plaintiff requests that the Court appoint a special master and/or take

        other appropriate measures to ensure sensitive information about the victims of

        Defendants' abuse remains confidential (unless authorized by a victim/survivor)

        and, additionally, provide a mechanism for the victims of abuse to review records

        pertaining to them to verify that they exist, are accurate, and complete, and are

        available to be reviewed by Michigan and/or other government officials and law

        enforcement agents;

    c. Ordering appropriate injunctive, declaratory, and other equitable relief;

    d. Issuing a writ of mandamus commanding Defendants to report, as required by law

        for, all child abuse presently known or suspected by them, and to submit proof of

        compliance with such order to the Court within 10 days of such order;

    e. Entering a judgment in favor of Plaintiff and against Defendants in an amount in

        excess of $75,000.00;

f. Awarding Plaintiff compensatory, restitutionary, general, consequential, punitive, and exemplary damages in an amount to be determined at trial;

g. Awarding pre-judgment and post-judgment interest as permitted by law;

h. Awarding reasonable attorneys' fees and costs, including expert fees as provided for by law; and

i. Granting such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMAND

171. Plaintiff alleges and incorporates via reference the allegations contained in all the above paragraphs, as fully as though the same were set forth herein at length.

172. Plaintiff demands a jury trial on all claims triable as a matter of right.

Date: September 11, 2025

Respectfully Submitted,

David Wesley Cornish, Esquire*
Cornerstone Legal Group, LLC
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Phone: 888-313-1385
Email: dwesley24@gmail.com

**ATTORNEY FOR PLAINTIFF**

39

## <u>VERIFICATION</u>

The facts set forth in the foregoing are true and correct to the best of the undersigned's knowledge, information and belief and are verified subject to the penalties for unsworn falsification to authorities via Pennsylvania, Michigan, and United States Law.

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this filing complies with the provisions for all state and United States laws requiring the filing for confidential information and documents be handled differently and separately than non-confidential information and documents.

Respectfully Submitted,

/S/ David Wesley Cornish, Esquire
David Wesley Cornish, Esquire
Bar ID #: 310865
230 South Broad Street, 17th Floor
Philadelphia, PA 19102
Phone: 212-444-2039
**ATTORNEY FOR PLAINTIFF**
**Date**: September 11, 2025